WOODYARD PUBLICATIONS, INC., *v.* COUNTY COURT OF
MINERAL COUNTY

(No. 8294)

Submitted February 12, 1936. Decided March 24, 1936.

LITZ and KENNA, JUDGES, dissenting.

*Vernon E. Rankin* and *Arthur Arnold,* for plaintiff in
error.

*S. P. Bell* and *Samuel Biern,* for defendant in error.

*Harry E. Watkins* for *amicus curiae,* Fairmont News-
paper Publishing Company.

MAXWELL, JUDGE:

This is a writ of error awarded the respondents to a
judgment of the circuit court awarding a peremptory
writ of mandamus commanding them to "deliver to and
cause to be published in the Mountain Echo, the only
Republican newspaper of general circulation in Mineral
County, West Virginia, the delinquent list of personal
property of Mineral County, West Virginia, for the tax
year 1934 and to pay for said publication as provided
by law." Relator is the owner of said newspaper.

The circuit court's action is based on Code, 11-9-22, as
amended by chapter 53 of the Acts of the Legislature of
1935. The said section requires the publication of (a) a

list of property improperly listed in the land books, or not ascertainable, and the amount of taxes charged on such property; (b) a list of other real estate which is delinquent for the non-payment of taxes thereon; (c) a list of personal property delinquent for non-payment of taxes. These lists are defined in a preceding section. Code, 11-9-20, as amended by Acts First Extra. Session 1933, chapter 17, article 9, section 20. It appears that in Mineral County for 1934, publications were made under said items (a) and (b), but the respondents refused to publish the personal property delinquent list. The pertinent portion of chapter 53, Acts of 1935 reads: "A copy of each of such lists shall at the same time be printed once, in two newspapers of opposite politics, if such there be in the county, and the costs of printing shall be paid out of the county treasury."

The amended section of the statute became effective March 9, 1935. The amendment consisted of the insertion in the section of the words, "and the costs of printing shall be paid out of the county treasury." Evidently the amendment was made in the light of the holding of this court in the matter of *Woodyard Publications Inc.* v *Ray Lambert, Sheriff of Nicholas County, and others,* (March 22, 1932) 112 W. Va. 22, 163 S. E. 858. In that case, we held that under the statute as it then stood there was no authority in the county court to pay for the publication of such lists, and therefore such court could not be required to cause them to be published.

In the case at bar, the relator takes the position that under the statute as amended, there can be no doubt of the duty imposed on the county court to pay for the publication of such list, and therefore there is a plain duty on the respondents which should be enforced by mandamus. The respondents admit that under the amendment, it clearly will be the duty of the county court to pay for the publication of such notices for the year 1935, and subsequent years, but they deny that the requirement of the amendment should be deemed operative in respect of the personal property list for the year 1934.

We are of opinion that respondents' refusal to cause

the personal property delinquent list for 1934 to be published was warranted by the law.

It is to be noted that the calendar year is the time-unit basis for the assessment of property and the collection of taxes. Code, 11-3-1, as amended by Acts Regular Session 1933, chapter 40, article 3, section 1; Code, 11-9-6 and 7, as amended by Acts Regular Session 1933, chapter 39, article 9, secs. 6 and 7. But for the preparation of budgets and for accounting with respect to expenditures, the time-unit basis is the fiscal year, July 1 to June 30. Code, 2-2-4; 11-8-10, as amended by Acts Second Extra. Session 1933, chapter 69, article 8, section 10.

Pursuant to the requirements of Code, 11-8-10, as amended by chapter 69 of the Acts of the Second Extra. Session of the Legislature of 1933, the county court of Mineral County, in August, 1934, laid the levies of the county for the current fiscal year (July 1, 1934 - June 30, 1935), in accordance with estimates theretofore prepared by it and approved by the state tax commissioner. This procedure involved allocation of the funds to be raised through the tax levies. The purposes for which funds raised by levies are to be expended are closely circumscribed by the statute. A county court may not lay levies for one purpose and expend the funds for another. Acts, Second Extra. Session of the Legislature 1933, chapter 67, article 8, section 25. An indebtedness created by a county court for an unauthorized purpose is void. Acts Second Extra. Session 1933, chapter 67, article 8, section 27. At the time of the levy session of 1934, there was no statute under which the court could have laid a levy for the purpose herein discussed. A public official violating said inhibition is personally liable for the amount improperly expended. Section 29 of the same act. It follows, clearly, that the publication herein sought to be enforced could not have been paid for out of funds realized from the levies laid in August, 1934.

It is urged, however, that provision could have been made for the cost of the publication when the levies were laid in August, 1935, and the charges paid out of taxes

collected in the fall of 1935. We cannot concur in this view, because the estimates for each year, on which estimates the levies are laid, can properly be considered as inclusive only of expenditures pertinent to the current fiscal year, and not inclusive of any items incident to the public business of some other fiscal year, whether prior or subsequent. Each fiscal year must be deemed a unit to itself. In no other manner, can there be maintained that precision of public fiscal affairs as manifested by the requirements of the several statutes pertaining to the subject. Although the statute (Code, 11-9-22, as amended by Acts of 1935, chapter 53), authorizes the publication of delinquent lists as late as two weeks prior to the August levy-session, another section (Code, 11-9-20, as amended by Acts First Extra. Session, 1933, chapter 17, article 9, section 20) is mandatory in its requirement that the sheriff shall prepare and make oath to such delinquent lists on or before the first Monday in June. This, of course, furnishes ample time for the county court to cause such lists to be published and paid for within the current fiscal year.

The amendatory act of 1935 (chapter 53) should, according to the general rule, be construed prospectively and not retrospectively; that is, it should be deemed pertinent to future fiscal years, but not applicable to the then current fiscal year. Legislative intention of retroactive effect of a statute is not to be inferred. Such purpose must be clear. *Jenkins* v. *Heaberlin,* 107 W. Va. 287, 289, 148 S. E. 117, and cases cited.

For the reasons presented we are of opinion that respondents should not be required to publish the personal property delinquent list for 1934. Therefore, we reverse the judgment of the circuit court and dismiss the proceeding.

*Reversed and dismissed.*

LITZ, JUDGE, dissenting:

I am constrained to dissent from the decision of the court, which, apparently, is based upon the opinion that

the statute in question was not intended to apply to the delinquent property list required to be returned by the sheriff to the county court at or before its levy term on the third Tuesday in August, 1935, notwithstanding the legislature declared the act effective from the date of passage, March 9, 1935. The reasons assigned for this view, as I interpret the opinion, are (1) that the cost of publication of the list was not provided for by the county court in the budget of August, 1934, for the fiscal year 1934-35; and (2) that the application of the act, which became effective March 9, 1935, to the delinquent list to be prepared by the sheriff on or before the first Monday in June, following, would render the statute retroactive. As the statute is mandatory in its terms, requiring the county court to pay for the publication of a delinquent list to be prepared and published by the sheriff in the future, I see no legal efficacy in either of the reasons advanced.   In the case of *Woodyard Publications, Inc.*, v. *Ray Lambert, Sheriff*, cited in the opinion, a writ of mandamus was granted compelling the county court of Nicholas County to cause to be published and pay the cost of publication of the county financial statement in accordance with section 16, article 5, chapter 7, Code 1931. In the opinion of the case, it is said: "Chapter 7, article 5, section 16 of the Code requires the county court of every county, under the penalty of a fine, to cause to be published within four weeks after its first session of each fiscal year in at least two newspapers of opposite politics, if there be such in the county, an itemized account of the receipts and expenditures of the county during the previous fiscal year. This provision is mandatory. *State ex rel. Bailey* v. *County Court*, 109 W. Va. 31, 152 S. E. 784. The non-performance of this duty cannot be defended on the ground that the county court is without available funds to pay the costs of publication. It may levy taxes, if necessary, for that purpose.   Nor will the performance of the duty, requiring the expenditure of money, violate chapter 11, article 8, section 13, Code 1931, which prohibits the county court from expending money

or incurring indebtedness it is not 'expressly' authorized by law to expend or incur."

Code, 11-9-20, requires the sheriff of each county, "on or before the first Monday in June, next succeeding the year for which such taxes are assessed * * *" to make up a list of the delinquent real and personal property for his county.

Code, 11-9-22, requires that such list shall be posted at the front door of the courthouse of the county and printed for one time in two newspapers of opposite politics, if there be such in the county, "at least two weeks before the session of the county court at which they are presented for examination."

Code, 11-9-23, provides that the sheriff or collector of the county shall present such lists to the county court for correction "at or before the session of the county court at which the county levy *is to be laid.*"

Code, 11-8-2, names the third Tuesday in August of each year as the day upon which the county court shall actually lay the county levy for the tax year.

It will be seen from a careful comparison of the foregoing sections of the Code that the day upon which the county court makes the levy of county taxes is the basic time from which to calculate the date of the publication of the delinquent lists by the sheriff. He is required by law to publish them at least two weeks before the levy session of the county court, the third Tuesday in August, which, in this case, was August 20, 1935. It thus appears that the sheriff could have complied with the mandate of the statute by causing to be published the delinquent list in question at any time before August 6, 1935. It is plain, therefore, that from the first day of July, 1935, until the 6th day of August, 1935, the sheriff could have published the list so that the cost of publication would have been a debt incurred within the fiscal year 1935-36, for which the county court could have provided at its levy term in August, 1935.

I conclude, therefore, (1) that the application of the act to the delinquent list thereafter prepared by the sheriff will not render the statute retroactive; (2) that the

cost of publishing the list is a legal debt which the county court must pay, even though the publication had been made in the fiscal year 1934-35; and (3) that the publication could have been made after July 1, 1935, and cost thereof paid from levies of 1935-36.

Judge Kenna joins me in this note of dissent.